**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:09CV138-GCM-DSC**

| | | |
|---|---|---|
| **CYNTHIA ANN-MARIE RICHARDS,** | ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **MEMORANDUM AND RECOMMENDATION** |
| **MICHAEL J. ASTRUE, Commissioner of Social Security Administration,** | ) ) ) ) | |
| **Defendant.** | ) ) | |

  **THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" and

and "Memorandum ... in Support ..." (both document #8) filed August 26, 2009; and Defendant's

"Motion for Judgment on the Pleadings" (document #9) and "Memorandum in Support of the

Commissioner's Decision" (document #10), both filed October 26, 2009.    This case has been

referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these

motions are now ripe for disposition.

  Having considered the written arguments, administrative record, and applicable authority,

the undersigned will respectfully recommend that Plaintiff's Motion for Summary Judgment be

<u>denied</u>; that Defendant's Motion for Judgment on the Pleadings be <u>granted</u>; and that the

Commissioner's decision be <u>affirmed</u>.


## I. <u>PROCEDURAL HISTORY</u>

  On March 11, 2005, Plaintiff filed an application for a period of disability, Social Security

disability benefits ("DIB"), and Supplemental Security Income ("SSI"), alleging she was unable to

work as of January 1, 2005 as a result of Post Traumatic Stress Disorder, panic disorder, and a mood disorder.  (Tr. 47-55, 67).

Plaintiff filed a timely Request for Hearing, and on May 13, 2008 a hearing was held before an Administrative Law Judge ("ALJ").  In a decision dated August 12, 2008, the ALJ denied Plaintiff's claim, finding that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision and  that Plaintiff suffered from major depressive disorder, generalized anxiety disorder, Post Traumatic Stress Disorder, headaches, and a history of stroke, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ further found that Plaintiff's subjective complaints and alleged resulting functional limitations were credible only to the extent that they restricted her Residual Functional Capacity ("RFC").[1]   The ALJ then found that Plaintiff retained the RFC to perform unskilled and semi-skilled jobs at the medium exertional level[2] not requiring performance of  factory production work, work in areas with a high incidence of noise or clamor, or work otherwise having a high stress factor.  The ALJ further limited Plaintiff's RFC to jobs  involving simple, routine, repetitive tasks; working with objects; and requiring only limited interaction with people and no interaction with crowds.  (Tr. 15).

---

[1]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a).  The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2]"Medium" work is defined in 20 C.F.R. § 404.1567(c) as follows:

> Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

The ALJ then correctly shifted the burden to Defendant show the existence of other jobs in the national economy which Plaintiff could have performed. The ALJ concluded that the Vocational Expert's ("VE") testimony, which was based on a hypothetical that factored in the above limitations, provided substantial evidence that although Plaintiff could not return to her past relevant work, there were a significant number of jobs in the national economy that she could perform. These jobs included work as a laundry labeler, order checker, park aide, and clerk. Accordingly, the ALJ found that Plaintiff was not disabled. (Tr. 19).

By notice dated February 6, 2009, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on April 6, 2009. On appeal, Plaintiff argues that the ALJ failed to properly evaluate the opinion of Plaintiff's treating neurologist, Chock Tsering, M.D., as well as the opinions of examining psychiatrists and non-examining physicians who reviewed Plaintiff's medical records. On the last page of her brief, Plaintiff also quotes the hypothetical that the ALJ submitted to the VE, but then offers no argument on that point and merely recites the general proposition that the hypothetical submitted to the VE must accurately reflect a claimant's limitations. See Plaintiff's "Memorandum ... in Support ..." (document #8). The parties' cross dispositive motions are ripe for disposition.

## II.  STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether

the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

# III.  DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[3]  With regard to Plaintiff's first assignment of error, she contends that the ALJ erred in not giving controlling weight to the opinion of Dr. Tsering in July 2007 that she was "disabled" due to a migraine-related stroke that resulted in weakness and clumsiness in her right arm and right leg. (Tr. 239).

As Defendant concedes in his brief, the record indicates that Dr. Tsering treated Plaintiff for migraine headaches from March 2006 through at least April 2008 and, therefore, Dr. Tsering qualifies as a treating physician.  (Tr. 238-241).  However, Dr. Tsering's opinion does not address the next step in the evaluation process and is not entitled to controlling weight.  Dr. Tsering's assertion that Plaintiff was "disabled" is not an opinion as to Plaintiff's functional limitations,  but rather, is an opinion as to the ultimate issue of disability.  (Tr. 239).[4]  The issue of whether an individual is disabled is administrative in nature and is reserved for the Commissioner to determine. 20 C.F.R. §§ 404.1527(e), 416.927(e).  Accordingly, Dr. Tsering's opinion must be considered by

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

[4]To the extent that Dr. Tsering's opinion could be construed as an opinion on Plaintiff's functional limitations, the Fourth Circuit has established that a treating physician's opinion need not be afforded controlling weight.  Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).  A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

the ALJ, but it is not controlling. Id. Dr. Tsering's opinion is a vocational conclusion, not a medical opinion concerning the nature and severity of Plaintiff's impairment. See Williamson v. Barnhart, 2002 WL 265105, at *6 (W.D.N.C. Feb. 15, 2002) (citing SSR 96-2p).

Although Dr. Tsering's statement cannot be given controlling weight because it constitutes an opinion on an issue that is reserved to the Commissioner, his conclusion must be and was considered by the ALJ in view of the factors outlined in 20 C.F.R. sections 404.1527(d) and 416.927(d). SSR 96-5p. In his decision, the ALJ thoroughly discussed Dr. Tsering's opinion and appropriately discredited it with specific references to the evidence of record, including Dr. Tsering's own treatment notes. After noting Dr. Tsering's July 2007 statement that Plaintiff was disabled due to her migraine-related stroke, the ALJ went on to explain that this statement was contradicted by Dr. Tsering's own subsequent treatment notes. (Tr. 17). In the report of a visit on April 21, 2008, Dr. Tsering noted that Plaintiff was initially evaluated in March 2006 following her admission to Carolinas Medical Center for complaints of headache, visual disturbance, and right-sided weakness. He also noted that Plaintiff's right hemiparesis[5] subsequently returned to normal. (Tr. 17, 240). Plaintiff's head pain later came under fair control. (Tr. 17, 240). Dr. Tsering stated that Plaintiff's clinical neurological picture was that of a mild right hemiparesis, and he suggested that Plaintiff's prognosis was better in view of the negative results of a recent magnetic resonance imaging scan and carotid Doppler ultrasound. (Tr. 17, 240). As Dr. Tsering's subsequent treatment notes reflect, the symptoms he deemed disabling in July 2007 either no longer existed or had improved in April 2008. The ALJ appropriately declined to afford Dr. Tsering's opinion controlling weight. (Tr. 239-240).

---

[5] Hemiparesis refers to weakness affecting one (1) side of the body. Stedman's Medical Dictionary, 800 (27th ed. 2000).

In addition, the ALJ noted that Dr. Tsering's opinion is contradicted by other evidence in the record. When Plaintiff presented to Carolinas Medical Center - Union on March 3, 2006 with complaints of right-sided numbness and tingling, Plaintiff was able to move from the stretcher to the bed with minimal assistance. (Tr. 18, 217). Although Plaintiff appeared to be dragging her right arm and right leg, she was able to lift her right leg to slide it under the blankets. (Tr. 18, 217). When asked if she had brought her medications with her, Plaintiff raised her right hand and pointed to her medications on the bedside table. (Tr. 218). Plaintiff demonstrated equal strength bilaterally in the upper and lower extremities, and she had good muscle tone bilaterally. (Tr. 18, 217-218). Laboratory reports yielded normal results. (Tr. 18, 219). This evidence undermines Dr. Tsering's contention that Plaintiff was disabled since late 2005 as a result of a migraine-related stroke, weakness and clumsiness in her right arm and right leg, and loss of sensation on the right side of her face and body. (Tr. 18, 239).

Concerning her second assignment of error, Plaintiff asserts that the assignment of a Global Assessment of Functioning ("GAF") score of forty-five (45) by two examining psychiatrists is equivalent to an opinion that her mental impairments are disabling, and the ALJ should have adopted these opinions.[6] The ALJ noted that a psychiatrist at Piedmont Behavioral Healthcare assigned Plaintiff a GAF score of forty-five (45), and Dr. Jeffrey Kaiser, a psychiatrist who performed a consultative examination of Plaintiff, estimated Plaintiff's GAF score to be between forty-five (45) and fifty (50). However, neither psychiatrist assigned any functional limitations as a result of Plaintiff's mental impairments, nor did they indicate that she was unable to work. (Tr. 170-171, 195-

[6] A GAF score between forty-five (45) and fifty (50) is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994).

199).  Rather, on examination at Piedmont Behavioral Healthcare, Plaintiff was observed to have no limitations in perception, intellectual functioning, orientation, insight, judgment, memory, thought content, or stream of thought.  (Tr. 170).  Similarly, upon examination by Dr. Kaiser, Plaintiff was alert, attentive, and oriented, with the exception of being a few days off on the exact date.  (Tr. 198).  She was pleasant and cooperative and though she seemed somewhat detached, she answered questions in a direct manner and her speech was well-organized.  (Tr. 198).  No bizarre or unusual thought content was noted, and Dr. Kaiser estimated Plaintiff's intelligence to be within the lower range of average.  (Tr. 198).  Given these examination findings, and in the absence of any assessed functional limitations by these physicians, Plaintiff's GAF scores cannot be reasonably interpreted as opinions that her mental impairments were disabling.

Finally,  Plaintiff was assigned a GAF score of forty-five (45) by the physician at Piedmont Behavioral Healthcare on March 31, 2003, which pre-dates Plaintiff's alleged disability onset date of January 1, 2005.  (Tr. 55, 171).  The next mental health treatment note is dated nearly two (2) years later, on February 25, 2005.  (Tr. 172-176). Plaintiff's failure to seek mental health treatment in the interim is substantial evidence supporting the ALJ's decision that her mental impairments were not disabling.  See  Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"); and Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965) (finding that symptoms that can be controlled by medication are not disabling).

Next, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he incorporated the findings of non-examining Agency medical experts who reviewed Plaintiff's medical records and made findings as to her functional limitations. Contrary to Plaintiff's

assertion, however, the Fourth Circuit has found that the opinion of a non-examining physician can constitute substantial evidence in support of the ALJ's decision when that opinion is consistent with the record.  Smith v. Schweicker, 795 F.2d 343, 345-346 (4th Cir. 1986).  Agency medical consultants are experts in the evaluation of the medical issues in disability claims arising under the Social Security Act.  20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(I); SSR 96-6p.  An ALJ can give great weight to an opinion from such a medical expert when the medical expert has thoroughly reviewed the record and the opinion is consistent with other evidence in the record.  Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005).

Here, Agency medical consultant Dr. Guiliana Gage reviewed the evidence of record relating to Plaintiff's mental impairments on April 27, 2006, which included the evidence from Daymark Recovery Services and the consultative examination report from Dr. Kaiser.  (Tr. 142-159).  Based on this evidence, Dr. Gage opined that Plaintiff was capable of performing simple, routine, repetitive tasks in a low stress, low production setting.  (Tr. 144).  Dr. Gage also suggested that Plaintiff would have some limitations in her abilities to interact with the general public and in responding appropriately to criticism and instructions from supervisors, and that she would need a work environment with limited interpersonal demands.  (Tr. 140, 144).  This assessment is consistent with the other evidence of record.  None of Plaintiff's treating or examining mental health professionals imposed any limitations on her ability to function as a result of her mental impairments.  (Tr. 167-199).  Plaintiff reported intermittent improvement in her depression and anxiety with medication, though she also continued to report feeling anxious, irritable, and overwhelmed taking care of her four children.  (Tr. 182, 184-185, 187, 191-192, 197).  Dr. Gage's restrictions to simple, routine, repetitive tasks in a low stress, low production setting with limited interpersonal demands

sufficiently accounts for this evidence.[7]

Although the ALJ did not expressly adopt Dr. Gage's opinion, his residual functional capacity assessment mirrors that advanced by Dr. Gage. (Tr. 15). As Dr. Gage's opinion was based on a thorough review of the relevant evidence of record and is consistent with substantial evidence of record, her assessment provides substantial evidence upon which the ALJ could rely in rendering his decision that Plaintiff was not disabled. Johnson, 434 F.3d at 657.

To the extent that Plaintiff's mention of the ALJ's hypothetical to the VE amounts to an assignment of error at step five, substantial evidence supports the ALJ's finding that a significant number of jobs exist in the regional and national economies that Plaintiff can perform despite her impairments. At the hearing, the ALJ elicited testimony from a VE, asking him to assume an individual of Plaintiff's age, education, and work experience who was restricted to medium level work that would require no more than the performance of simple, routine, repetitive tasks of a low stress nature; that would not have a high stress factor; that would not include factory production work or work with a high incidence of noise or clamor; that would involve dealing with objects or persons rather than crowds; and, that would be performed at the unskilled or semi-skilled level. (Tr. 267-268). The VE testified that such an individual could perform the job of laundry laborer (1,070 jobs available in regional economy and approximately 50,000 nationally), order checker (3,300 regionally and over 200,000 nationally); park aid (1,600 regionally and "several thousand" nationally); and mail clerk (1,750 regionally and 86,000 nationally). (Tr. 268-269).

---

[7]Nine months prior to Dr. Gage performing her evaluation, Plaintiff's medical records were also reviewed by Agency medical consultant Tovah Wax. Like Dr. Gage, Ms. Wax limited Plaintiff to simple, routine, repetitive tasks with no demands for social interaction. (Tr. 126). Ms. Wax did not find that Plaintiff was incapable of performing substantial gainful activity. Dr. Gage's assessment, which was made in consideration of updated medical records, included the limitations assessed by Ms. Wax as well as some additional restrictions. (Tr. 140).

Vocational expert testimony as to the existence of jobs will constitute substantial evidence in support of the ALJ's decision if it is in response to a hypothetical question based on an accurate residual functional capacity.  Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989).  As discussed above, a comparison of the ALJ's hypothetical and Dr. Gage's opinion, as well as other credible evidence in the record ,reveals that the ALJ's question accurately reflected the Plaintiff's restrictions. The Commissioner met his burden of producing evidence of the existence of a significant number of jobs in the national economy that are within Plaintiff's residual functional capacity.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent,  as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence."  Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)."  Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987).   This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records, formulation of her RFC,  and ultimate determination that Plaintiff was not disabled.

## IV.  RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #8) be **DENIED**; that Defendant's "Motion for Judgment on the Pleadings" (document #9) be **GRANTED**; and that the Commissioner's

determination be **AFFIRMED**.

## V.  NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same.  Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003);  Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990).  Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365.  Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Graham C. Mullen.

**SO RECOMMENDED AND ORDERED**.

Signed: November 2, 2009

David S. Cayer
United States Magistrate Judge